IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE: )
)
Houseboat STARSHIP II and )
CLYDE CRAIG and VICKI CRAIG )
Individually and d/b/a EAST PORT ) NO. 2:05-0086
MARINA, and JIM BARNA LOG ) JUDGE HAYNES
SYSTEMS OF TENNESSEE, LLC, )
a domestic corporation d/b/a EAST )
PORT MARINA & RESORT. )

**MEMORANDUM**

In this admiralty action, Houseboat STARSHIP II, Clyde Craig and Vicki Craig individually, and d/b/a East Port Marina, and Jim Barna Log Systems of Tennessee, LLC, d/b/a/ East Port Marina & Resort, filed this action seeking exoneration or limited liability for claims filed against them in another action in this Court by several individuals, Myers, et al. v. Lakeview Yachts, et al., 1:05-0037.

The claims in the Myers action arise from an incident on a commercially chartered houseboat on the Dale Hollow Lake, a navigable waterway. According to the Myers plaintiffs on the third day voyage, carbon monoxide allegedly leaked on the houseboat while the passengers were asleep and while the vessel was tied to an island on Dale Hollow Lake. Claimants allege harm from their exposure to carbon monoxide.

The Myers plaintiffs seek recovery from Steve and Terry Jones, the title owners of this vessel and Clyde and Vicki Craig who are alleged to be the pro hac vice owners as well as Lakeview Yachts, Inc., Westerdeck Corporation and Lentek Industries that are manufacturers of the boat, its exhaust system and mechanical parts of that exhaust system on the boat at issue.

1

Before the Court is Lakeview Yachts's motion to dismiss (Docket Entry No. 12), contending as a cross-claimant that this Court lacks subject matter jurisdiction in this action ~~claims~~. The parties who filed this action asserts federal jurisdiction under its admiralty jurisdiction statute and the Limitation of Liability Act, ("LOLA"), 46 U.S.C. App. 183(a).

As to admiralty jurisdiction, 28 U.S.C. § 1333, vests "district courts . . . . [with] original jurisdiction . . . of (1) any civil case of admiralty or maritime jurisdiction. . . ." Admiralty jurisdiction arises where (1) the tort occurred on navigable water; and (2) there is a connection with maritime activity. Grubart v. Great Lakes Dredge & Dock Company, 513 U.S. 527, 534 (1995). The Sixth Circuit held in Finnesth v. Carter, 712 F.2d 1041 (6th Cir. 1983), that the Dale Hollow Lake is a navigable waterway for the purpose of admiralty jurisdiction.

The test for maritime activity for admiralty jurisdiction is the events location and connection with maritime commerce that includes two inquiries:

> A court, first, must "assess the general features of the type of incident involved," to determine whether the incident was "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity rise to the incident" shows a "substantial relationship to traditional maritime activity."

Grubart, 513 U.S. at 534 (quoting Sisson v. Ruby, 497 U.S. 358, 363, 364, 365 n.2 (1990).

The Supreme Court requires the court to "assess the general features of the type of incidents involved," and whether the incident has "a potentially disruptive impact on maritime commerce." Grubart, 513 U.S. 534 (quoting Sisson, 497 U.S. at 364, n.2). The Court "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Grubart, 513 U.S. at 534 (quoting Sisson, 497 U.S. at 365). The effect of the "connection with maritime activity" limitation is to screen disputes that are not maritime actively, such as a jet falling in a waterway or a collision of

2

Before the Court is Lakeview Yachts's motion to dismiss (Docket Entry No. 12), contending as a cross-claimant that this Court lacks subject matter jurisdiction in this action. The parties who filed this action asserts federal jurisdiction under its admiralty jurisdiction statute and the Limitation of Liability Act, ("LOLA"), 46 U.S.C. App. 183(a).

As to admiralty jurisdiction, 28 U.S.C. § 1333, vests "district courts . . . . [with] original jurisdiction . . . of (1) any civil case of admiralty or maritime jurisdiction. . . ." Admiralty jurisdiction arises where (1) the tort occurred on navigable water; and (2) there is a connection with maritime activity. Grubart v. Great Lakes Dredge & Dock Company, 513 U.S. 527, 534 (1995). The Sixth Circuit held in Finnesth v. Carter, 712 F.2d 1041 (6th Cir. 1983), that the Dale Hollow Lake is a navigable waterway for the purpose of admiralty jurisdiction.

The test for maritime activity for admiralty jurisdiction is the event's location and connection with maritime commerce that includes two inquiries:

> A court, first, must "assess the general features of the type of incident involved," to determine whether the incident was "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity rise to the incident" shows a "substantial relationship to traditional maritime activity."

Grubart, 513 U.S. at 534 (quoting Sisson v. Ruby, 497 U.S. 358, 363, 364, 365 n.2 (1990)).

The Supreme Court requires the court to "assess the general features of the type of incidents involved," and whether the incident has "a potentially disruptive impact on maritime commerce." Grubart, 513 U.S. 534 (quoting Sisson, 497 U.S. at 364, n.2). The Court "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Grubart, 513 U.S. at 534 (quoting Sisson, 497 U.S. at 365). The effect of the "connection with maritime activity" limitation is to screen disputes that are not maritime actively, such as a jet falling in a waterway or a collision of

2

swimmers in a navigable waterway. Id. at 532-33; Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249, 255 (1972).

Here, the travel of citizens using a commercial houseboat on Dale Hollow Lake, a navigable waterway has a substantial relationship to traditional maritime activity, i.e., commercial travel on the navigable waterway. Although this vessel was "tied to shore," this vessel was in use to facilitate travel on the Dale Hollow Lake, a navigable waterway. The Court concludes such usage falls within the maritime activity of riverboat travel that clearly impacts maritime commerce.

Claimants rely upon H2O Houseboat Vacations, Inc. v. Hernandez, 103 F.3d 914 (9th Cir. 1996), involving claims of houseboat carbon monoxide case where the Ninth Circuit did not find admiralty jurisdiction. In H2O, the "houseboat was tied to the shore of Lake Havasu. The Hernandez family slept on the houseboat that night before they were to take it out on the lake the next day." Id. at 915. H2O is factually distinguishable. Here, the vessel was in the course of a waterway trip and actually tied to an island during the trip on the lake. In contrast, the incident in H2O occurred on the vessel "the night before they were to take it out on the lake the next day."

Aside from admiralty jurisdiction, in Richardson v. Harmon, 222 U.S. 96, 106 (1911), the Supreme Court held that if the tort that caused the underlying casualty was non-maritime and alone would not fall within admiralty jurisdiction, the Limitation of Liability Act provides an independent basis for subject matter jurisdiction, "whether the liability be strictly maritime or from a tort non-maritime." Richardson rule retains its viability. Benedict on Admiralty, Vol. 1 § 225 (7th Ed.) (1999 Supp.) ("Proceedings by vessel owners to limit their liability as permitted by

3

the Acts of Congress are within admiralty jurisdiction even if the claims limited against might not be sued upon in admiralty.")

Under the Limitation of Liability Act, 46 U.S.C. § 183(a), a vessel owner's liability is limited if the event were at issue occurred, "without the privity or knowledge of such owner." Whether the Craigs "had the privity or knowledge of the condition which led to the Myers plaintiffs' injuries and damages, is a factual issue that cannot be decided on a Rule 12 motion.

> . . . the petition alleg[ed] that the injury was occasioned without the owner's privity or knowledge, and the answer affirm[ed] that it was caused by the owner's negligence, and not otherwise. If the fact was as alleged in the petition, the case was within the statute, for § 4283 (U.S. Comp. Stat. 1901, p. 2943) declares: 'The liability of the owner of any vessel . . . for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel and her freight then pending.' And while the claimant was at liberty, under admiralty rule 56, to contest the owner's right to a limitation of liability, the decision of the question necessarily rested with the court. Its jurisdiction was not ousted merely because the claimant took issue with what was alleged in the petition. The questions of fact so presented were to be settled by a trial, and this was so whether the facts were jurisdictional or otherwise.

White v. Island Transp. Co., 233 U.S. 346, 349-50 (1911) (citations omitted and emphasis added).

Lakeview Yachts next contends that the Craigs are not "owners" for the purpose of the Limitation of Liability Act. In Flink v. Paladini, 279 U.S. 59, 63 (1929), the Supreme Court stated that in this context the term "owner" is to be liberally defined: "[W]e are of the opinion that the words of the act must be taken in a broad and popular sense in order not to defeat the manifest intent" of Congress to encourage maritime trade. In Dick v. United States, 671 F.2d 724, 727 (2d Cir. 1982), the term "owner" in Limitation of Liability Act was described as an "untechnical word" to be interpreted in a "liberal way," and can include "one who exercise[d] . . . dominion over a vessel." (citations omitted).

4

In Complaint for Exoneration of or Limitation of Liability of Shell Oil Company, et al., 780 F.Supp. 1086 (E.D. La. 1991), where a fire on a gas well injured several people, a title owner and de facto operator of the vessel were held to be entitled to limit their liability.

> The term "owner" does not require title, but rather, as a general rule, one who is subjected to a shipowner's liability because of his exercise of dominion over a [i.e., relationship to] to vessel should be able to limit his liability to that of an owner. More succinctly stated, the act is designed to cover one who is a "likely target" for liability claims predicated on his status as the person perhaps ultimately responsible for the vessel's maintenance and operation.

Id. at 1089. (footnote omitted). Accord Complaint of Chesapeake Shipping, Inc., 803 F.Supp. 872, 873 (S.D.N.Y. 1992) (a ship management company permitted to limit its liability given its "broad . . . range of managerial responsibility of the vessel.") (quoting In re Petition of United States, 259 F.2d 608 (3rd Cir. 1958).

Here, Clyde and Vicki Craig, allegedly exercised management and operational responsibilities for this vessel, including exclusive right to rent the vessel to customers. (See Docket Entry No. 14, Exhibit B "Limited Property Management Agreement"). Under that agreement, the Craigs could exercise control and possession of the vessel and could be held responsible for providing maintenance services. The Court concludes that at this stage, the Craigs may be treated as owners under the Limitation of Liability Act, subject to further proof.

For these reasons, the Court concludes that Lakeview Yachts's motion to dismiss (Docket Entry No. 12) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 12th day of December, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge